UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JACOB P.,

            Plaintiff,

   v.

COMMISSIONER OF SOCIAL SECURITY,

            Defendant.

CASE NO. 3:19-cv-06063-JRC

ORDER ON PLAINTIFF'S COMPLAINT

This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Magistrate Judge Rule MJR 13. *See also* Consent to Proceed Before a United States Magistrate Judge, Dkt. 2. This matter has been fully briefed. *See* Dkts. 11, 16, 17.

Plaintiff, who alleges disability due to mental impairments, including depression, anxiety, headaches, and insomnia, challenges the Administrative Law Judge's ("ALJ") evaluation of his symptom testimony.

ORDER ON PLAINTIFF'S COMPLAINT - 1

After considering and reviewing the record, the Court concludes that the ALJ erred in discounting plaintiff's testimony about the severity of his mental impairment-related symptoms, including severe fatigue, agoraphobia, self-isolation, and headaches, that would render him unable to seek and sustain full-time employment. The ALJ's error in rejecting plaintiff's testimony was not harmless; however, even crediting plaintiff's testimony as true, there are inconsistencies between plaintiff's testimony and the medical evidence of record that must be resolved. Thus, a remand for further proceedings is appropriate.

## PROCEDURAL HISTORY

Plaintiff filed an application for Supplemental Security Income ("SSI") benefits pursuant to 42 U.S.C. § 1382(a) (Title XVI) of the Social Security Act on July 17, 2015, alleging a disability onset date of August 1, 2013. *See* AR 44. Plaintiff's application was denied initially and following reconsideration. *See* AR 44. Plaintiff's requested hearing was held before ALJ Joanne E. Dantonio on April 26, 2017. *See* AR 60–69. The ALJ held a supplemental hearing with plaintiff on November 29, 2017. *See* AR 44, 70–101. On February 9, 2018, the ALJ issued a written decision in which she concluded that plaintiff was not disabled pursuant to the Social Security Act. *See* AR 44–54.

On January 24, 2019, the Appeals Council denied plaintiff's request for review, making the written decision by the ALJ the final agency decision subject to judicial review. *See* AR 4–6; 20 C.F.R. § 404.981. Plaintiff filed a complaint in this Court seeking judicial review of the ALJ's written decision in November 2019. *See* Dkts. 1, 5. Defendant filed the sealed administrative record regarding this matter ("AR") on April 13, 2020. *See* Dkt. 9.

**BACKGROUND**

Plaintiff, Jacob P., was born in 1991 and was 22 years old on the alleged date of disability onset of August 1, 2013. *See* AR 44, 52, 78. Plaintiff graduated from high school, and his work history includes prior employment as a temporary worker performing general labor and janitorial work. AR 52, 80, 85. Plaintiff states that he stopped working in July 2015 due to his impairments. *See* AR 81, 85. However, plaintiff testified that he most recently worked at Petco for several days in 2017 through a vocational assistance program. AR 81.

According to the ALJ, plaintiff has at least the severe impairments of major depressive disorder, anxiety disorder, headaches, insomnia, and dependent/avoidant personality disorder. *See* AR 46. The ALJ found that plaintiff was not disabled under the Social Security Act during the relevant period. AR 54.

**STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

**DISCUSSION**

Plaintiff argues that the ALJ failed to properly evaluate plaintiff's symptom testimony. *See* Dkt. 11, at 11–16. Finding this issue dispositive, the Court does not address plaintiff's remaining arguments.

**I.     Plaintiff's Symptom Testimony**

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms he alleges, and the record contains no

affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison v. Colvin*, 759 F.3d 995, 1014–15 (9th Cir. 2014) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1995)).

Here, at step four in the sequential evaluation process, the ALJ found that although plaintiff's medically determinable impairments could be expected to cause some of the alleged symptoms, plaintiff's statements about the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with medical evidence and other evidence in the record. AR 50.  Specifically, the ALJ discounted plaintiff's symptom testimony because:  (1) medical records reflect that plaintiff's treatment has been conservative and that plaintiff failed to follow treatment recommendations; (2) medical records do not contain objective findings that support a disabling degree of limitation; and (3) plaintiff's reported activities of daily living are consistent with the ALJ's residual functional capacity ("RFC") assessment. *See* AR 49–51.

With respect to the ALJ's first reason, evidence of "conservative treatment" is a sufficiently clear and convincing reason to discount a plaintiff's testimony regarding severity of an impairment. *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007).  Further, an ALJ may discredit a plaintiff's testimony based on "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).  However, an ALJ may not find a plaintiff's symptoms are inconsistent with evidence in the record on the basis that the frequency or extent of the treatment sought by the individual is not comparable with the degree of alleged limitations "without considering possible reasons he [] may not comply with treatment or seek consistent treatment with the degree of his [] complaints." Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, at *9 (2017).  These

1 reasons may include, but are not limited to, an individual's restructuring of activities to minimize
2 symptoms by avoiding mental stressors that aggravate his symptoms, or due to an individual's
3 mental impairments or limitations. *See id.* at *9–10.

4     Here, the ALJ cited to medical records that reflect that plaintiff's treatment has been
5 conservative and consists of medication and counseling. *See* AR 51 (citing AR 435, 443, 467,
6 483). However, these records reflect that plaintiff tried multiple medications to treat his
7 depression, anxiety, and insomnia, which did not relieve his symptoms, had side effects, or
8 worked only temporarily. *See* AR 369 (Celexa for depression), AR 370 (Wellbutrin for
9 depression), AR 432 (venlafaxine for depression), AR 435 (fluoxetine for depression), AR 441
10 (increase in venlafaxine dosage for depression), AR 455 (buspirone for anxiety), AR 456, 483
11 (doxepin and trazodone for sleep), AR 484 (Vyvanse for possible ADHD). The record further
12 reflects that he regularly attended counseling (AR 491–31, 438–39), was referred to a
13 pulmonologist for his insomnia and fatigue (AR 455), and sought treatment through his primary
14 care physician and a psychiatrist. *See, e.g.*, AR 367–81, 432–35. "Persistent attempts to obtain
15 relief of symptoms, such as increasing dosages and changing medications, trying a variety of
16 treatments, referrals to specialists, or changing treatment sources may be an indication that an
17 individual's symptoms are a source of distress and may show that they are intense and
18 persistent." SSR 16-3p, at *9.

19     Additionally, in discrediting plaintiff's symptom testimony, the ALJ cited to plaintiff's
20 failure to engage in physical exercise as recommended by treatment providers, failure to undergo
21 a sleep study for his insomnia, and failure to seek additional treatment regarding his chronic
22 headaches. *See* AR 50–51 (citing AR 387, 483–84). During the November 2017 hearing,
23 plaintiff admitted that he had not been exercising as recommended because he cannot leave his
24

room, or even his bed, due to his depression, fatigue, and agoraphobia symptoms. *See* AR 80, 84–85. Plaintiff further testified that he knows he needs to see a neurologist for his headaches, but he has not done so due to his agoraphobia and fatigue. *See* AR 84. Plaintiff stated, "I try [to get out of the house], but I'm unable to. . . . I'll get pretty much to the doorstep and it's like there's a barrier." AR 87. Plaintiff's complaints regarding his inability to leave his home, except for therapy, are consistently noted throughout the medical record. *See, e.g.*, AR 371, 388, 396, 417, 423, 434, 438, 441, 483, 498. These reasons may legitimately explain plaintiff's failure to seek additional treatment or his failure to comply with recommended treatment, and at least some evidence of record appears to support plaintiff's reasons. *See* SSR 16-3p, at *9–10.

Although the ALJ briefly referenced plaintiff's agoraphobia, the ALJ did not explain how she considered plaintiff's reasons for failing to seek or to comply with treatment—so that it is unclear to the Court whether the ALJ considered plaintiff's reasons at all. *See* 49. In failing to explain how she considered plaintiff's reasons for noncompliance, the ALJ erred and failed to follow agency guidance regarding the evaluation of plaintiff's symptom testimony. *See* SSR 16-3p, at *10 (The ALJ "will review the case record and determine whether there are explanations for inconsistencies in an individual's statements about symptoms and their effects, and whether the evidence of record supports any of the individuals statements at the time he [] made them. [The ALJ] will explain how [she] considered the individual's reasons in our evaluation of the individual's symptoms."); *see also Trevizo v. Berryhill*, 871 F.3d 644, 679–80 (9th Cir. 2017) (finding that the ALJ's weighing of treatment noncompliance without addressing the plaintiff's reason for failing to do so was erroneous). Therefore, the ALJ's first reason for discounting plaintiff's symptom testimony—that plaintiff failed to follow treatment recommendations—is not supported by substantial evidence in the record.

1      Regarding the ALJ's second reason for discounting plaintiff's symptom testimony,
2  inconsistency with the objective evidence may serve as a clear and convincing reason for
3  discounting plaintiff's testimony.  *See* SSR 16-3p, at *8–9; *Regennitter v. Commissioner of*
4  *Social Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1998).  However, an ALJ may not reject a
5  plaintiff's subjective symptom testimony "solely because the degree of pain alleged is not
6  supported by objective medical evidence."  *Orteza v. Shalala*, 50 F.3d 748, 749-50 (9th Cir.
7  1995) (internal quotation marks omitted); *Byrnes v. Shalala*, 60 F.3d 639, 641-42 (9th Cir. 1995)
8  (applying rule to subjective complaints other than pain).
9      Here, the ALJ cited to purported inconsistencies between plaintiff's alleged symptoms
10 and treating and examining medical providers' clinical records and observations.  *See* AR 50–51.
11 Notably, the ALJ cited to two mental status examinations ("MSE") purporting to show that
12 plaintiff's symptoms are not related to his mental impairments and that his attention and
13 concentration are intact, he presented appropriate judgment and insight, and his thought
14 processes and cognitive function are logical and goal oriented.  AR 51 (citing AR 399, 441).
15 However, the ALJ failed to address—and appears to have overlooked—that one of the cited
16 MSEs actually reflects that plaintiff's insight and judgment are not within normal limits (AR
17 399), while the other reflects that plaintiff's mood and affect are anxious.  AR 441.  Further,
18 additional MSEs throughout the medical record show that plaintiff frequently presented with a
19 depressed, sad, anxious, and/or flat affect.  *See, e.g.*, AR 409–10, 432, 435, 456, 484, 487–89,
20 494, 493–94.  Further still, the MSEs note impairments to plaintiff's intellectual functioning,
21 concentration, orientation, insight, judgment, and thought content.  *See* AR 410–11, 501.
22     Additionally, the ALJ cited to medical records that reflected that plaintiff tried several
23 antidepressants without effect and that plaintiff was noted to be "stable" during a period when he
24

1 | was unmedicated.  AR 50 (citing AR 369–70, 375).  A plaintiff may be "stable" and disabled at
2 | the same time.  The fact that plaintiff's condition was "stable" at certain points during the
3 | relevant period is not a clear and convincing reason for discounting plaintiff's testimony, given
4 | that the record indicates that plaintiff exhibited, complained, and continued to seek treatment
5 | regarding his symptoms.  *Ghanim v. Colvin,* 763 F.3d 1154, 1164 (9th Cir. 2014); *see also* AR
6 | 365–76 (observing "no outward signs of depression" but noting "flat affect" and prescribing
7 | depression medications), AR 410, 435, 441, 456 (observing anxious, depressed, and sad mood
8 | and affect), AR 473, 476–77 (noting fatigue).  To the extent that the ALJ cites to additional
9 | medical records, these records do not appear inconsistent with plaintiff's testimony and reports to
10 | treatment providers regarding the severity of his symptoms.  *See, e.g.*, AR 367, 369, 371, 375,
11 | 387–88, 395–96, 432, 434, 441, 455, 483, 490, 492; *see also Brown-Hunter v. Colvin*, 806 F.3d
12 | 487, 494 (9th Cir. 2015) ("Our decisions make clear that we may not take a general finding—an
13 | unspecified conflict between [a plaintiff's] testimony . . . and [his] reports to doctors—and comb
14 | the administrative record to find specific conflicts." (quoting *Burrell v. Colvin*, 775 F.3d 1133,
15 | 1138 (9th Cir. 2014)).  Therefore, the ALJ's second reason for discounting plaintiff's
16 | testimony—that the medical records do not contain objective findings that support a disabling
17 | degree of limitation—is not supported by substantial evidence in the record.
18 |         As for the ALJ's third reason, the ALJ stated that plaintiff's knowledge of computers and
19 | his ability to play video games for long periods of time is consistent with the RFC, which
20 | included the ability to perform sedentary work.  AR 51.  An ALJ may discredit a plaintiff's
21 | testimony when the plaintiff reports participation in everyday activities indicating capacities that
22 | are transferable to a work setting.  *See Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 600
23 | (9th Cir. 1999).  However, "the mere fact that [an individual] has carried on certain daily
24 |

1  activities . . . does not in any way detract from [his] credibility as to [his] overall disability."

2  *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (quoting *Vertigan v. Halter*, 260 F.3d 1044,

3  1050 (9th Cir. 2001)). "Only if the level of activity is inconsistent with [the individual]'s

4  claimed limitations would these activities have any bearing on [the individual]'s credibility."

5  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (also noting that "disability claimants

6  should not be penalized for attempting to lead normal lives in the face of their limitations."). In

7  support of this conclusion, the ALJ cited to one medical examiner's observation that plaintiff has

8  a "strong disability conviction" and that "if [plaintiff] obtained some support to be independent

9  from his aunt and uncle, and some vocational assistance, he would be able to work." AR 51

10 (citing AR 500).

11      Here, the ALJ appears to have overlooked that plaintiff did receive vocational assistance

12 in 2017, and yet he still failed to maintain even temporary employment due to his alleged

13 symptoms. *See* AR 81–82; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038 (9th Cir. 2007) ("It does

14 not follow from the fact that a claimant tried to work for a short period of time and, because of

15 his impairments, failed, that he did not then experience [symptoms] and limitations severe

16 enough to preclude him from maintaining substantial gainful employment"). Further, the ALJ

17 provided no reasoning to show how plaintiff's ability to work on a computer—while isolating at

18 home—is inconsistent with his testimony regarding severity of symptoms or how plaintiff would

19 be able to perform work at the level described in the RFC. *See* AR 51, 84–85 (testimony

20 regarding plaintiff's limited ability to leave his home due to symptoms). Without further

21 analysis, the Court cannot determine whether plaintiff's activities, including his computer

22 activities, are inconsistent with his testimony regarding the severity of his symptoms and

23 functional limitations. *See Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003) ("We require

24

1  the ALJ to build an accurate and logical bridge from the evidence to her conclusions so that we
2  may afford the claimant meaningful review of the SSA's ultimate findings.").

3  The Court would like to believe that claimants can help themselves if they simply stop
4  playing video games, get out of the house, and apply those same skills to obtain employment, but
5  unfortunately the ALJ, and this Court, must avoid the temptation to play doctor, and rely on the
6  testimony of claimants' treatment providers to determine whether these activities are readily
7  transferable to maintaining substantial gainful employment.  *See Schmidt v. Sullivan*, 914 F.2d
8  117, 118 (7th Cir. 1990) ("[J]udges, including administrative law judges of the Social Security
9  Administration, must be careful not to succumb to the temptation to play doctor . . . . Common
10 sense can mislead; lay intuitions about medical phenomena are often wrong.") (internal citations
11 omitted).  Here, the ALJ's conclusion that plaintiff's reported activities of daily living are
12 consistent with full time employment is not supported by substantial evidence in the record.

13 In sum, the ALJ erred because she failed to provide a specific, clear and convincing
14 reason to discredit plaintiff's testimony regarding the severity of his symptoms and functional
15 limitations.  *Garrison*, 759 F.3d at 1014–15.  The Court also concludes that the error is not
16 harmless because had the ALJ fully credited plaintiff's testimony, the RFC would have included
17 greater limitations.  *See Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) (quoting *Stout v.*
18 *Cmm'r*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)) ("'a reviewing court cannot consider [an] error
19 harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the
20 testimony, could have reached a different disability determination.'").

21 **II.     Remand for Further Proceedings**

22 In this case, a remand for further proceedings, rather than an award of benefits, is
23 appropriate.  Generally, "where '(1) the record has been fully developed and further
24

1 administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand,'" a remand for an award of benefits is appropriate. *Trevizo*, 871 F.3d at 682–83 (quoting *Garrison*, 759 F.3d at 1021). But "[w]here there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate." *See Treichler v. Cmm'r*, 775 F.3d 1090, 1101 (9th Cir. 2014).

Here, the ALJ failed to give a valid reason for rejecting plaintiff's testimony regarding the severity of his symptoms and functional limitations. If plaintiff's testimony was credited as true, the ALJ could be required to find plaintiff disabled. *See Trevizo*, 871 F.3d at 682–83. However, there is conflicting medical opinion evidence that must be resolved with plaintiff's testimony. For example, although plaintiff testified that he is unable to work because of severe symptoms from mental impairments, an examining psychologist and State agency reviewing psychologists opined that plaintiff has no more than moderate limitations in his abilities to perform work-related activities. *See* AR 150–51, 162–63, 397, 389, 499. Because there are inconsistencies between plaintiff's testimony and the medical evidence of record regarding whether plaintiff has functional limitations that would render him disabled under the Social Security Act, a remand for further proceedings is appropriate. *See Treichler*, 775 F.3d at 1101.

**III.     Remaining Issues**

Plaintiff also argues that the ALJ erred in evaluating medical evidence and lay witness evidence. *See* Dkt. 11, at 2–6, 8–9. Additionally, plaintiff contends that additional medical

evidence submitted to the Appeals Council shows that the ALJ's decision is not supported by substantial evidence. *See id.* at 9–11.

Because this Court remands for further proceedings, the ALJ must reassess all of the medical opinion evidence, including new evidence submitted to the Appeals Council, as well reassess the lay witness evidence. *See* Program Operations Manual System (POMS) GN 03106.036 *Court Remand Orders*, https://secure.ssa.gov/poms.nsf/lnx/0203106036 (last visited August 4, 2020) (a court order vacating a prior decision and remanding the case voids the prior decision and thus returns the case to the status of a pending claim). Thus, this Court does not address plaintiff's remaining issues.

## CONCLUSION

Based on these reasons and the relevant record, the Court **ORDERS** that this matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner for further consideration consistent with this order.

**JUDGMENT** should be for **PLAINTIFF** and the case should be closed.

Dated this 25th day of September, 2020.

J. Richard Creatura
United States Magistrate Judge